AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
05/03/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
May 3, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ch___ DEPUTY

United States of America

v.

DAVID SANCHEZ,

Defendant(s)

Case No. 2:21-mj-02186

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of April 15 and April 27, 2021 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Stephen J. May*
*Complainant's signature*

Stephen J. May, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 3, 2021

*Paul L. Abrams*
*Judge's signature*

City and state: Los Angeles, California

Hon. Paul Abrams, U.S. Magistrate Judge
*Printed name and title*

AUSA:_Kevin J. Butler x6495_____

**AFFIDAVIT**

I, STEPHEN J. MAY, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for DAVID SANCHEZ ("SANCHEZ") for violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery). SANCHEZ is currently in custody at the Los Angeles County Jail.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed for the past 22 years. From September 1999 through December 2003, I primarily worked as a Bank Robbery Investigator in the San Francisco Division of the FBI. From December 2003 to the present, I have worked as a Bank Robbery Investigator in the Los Angeles Division of the FBI. And since May 2005, I have also been the Bank Robbery Coordinator in the Los Angeles Division of the FBI.

4. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

5. As a Bank Robbery Investigator and Bank Robbery Coordinator, I investigate bank robbery cases assigned to me and review, analyze, and disseminate investigative data (including bank surveillance photographs) on nearly all bank robberies that occur in the Central District of California. Since May 2005, there have been more than 3,500 bank robberies in the Central District of California.

6. Since October 2013, I have also been the lead FBI Agent for the San Gabriel Valley Violent Crime Task Force, which works in conjunction with Task Force Officers from the Los Angeles County Sheriff's Department to investigate commercial and retail robberies.

7. On February 27th and 28th of 2014, I received basic training (Cellular Survey Analysis and Geo-location) from the FBI Cellular Analysis and Survey Team, which included utilizing cellular tower logs to identify a subject phone or phones of different crimes, even when it was not clear whether a cell phone was in use during the commission of the crime. I have also analyzed tower dump data sets and historical cell site data sets for my own FBI cases and other local police departments' investigations on a number of occasions.

8. On September 8, 2020, I completed the ZetX E-learning eight-hour (self-paced) training course – "Forensic Analysis of

Cellular Networks."  The course provided a detailed instruction on cellular technologies operating in the United States.  The history of cellular technologies, the different technologies used in cellular networks, and mapping considerations associated with the networks were thoroughly covered.  Additionally, there was an introduction to drive-test techniques (network survey), equipment overview, and how to map and analyze drive test data.  The course concluded with instruction about how to present forensic call detail mapping evidence in court.

      9.  On November 4 and continuing through November 6, 2020, I virtually attended and completed the ZetX WEXA training conference.  The WEXA Conference brought together Historical Cell Site Location Information Subject Matter Experts from across the nation to present criminal investigations and shared investigative approaches.  In addition, the WEXA conference covered Long Term Evolution technology, Radio Frequency exposure, real-time location data, cellular technology updates, and drive-test surveys.

      10. In connection with the bank robbery and commercial/retail robbery investigations in which I have participated, I have used a variety of investigative techniques, including witness interviews, speaking with law enforcement agents and officers, reviewing surveillance images and cellular telephone data, and reviewing physical evidence.  As a result of this experience and my conversations with other law enforcement personnel, including FBI Special Agents and

local law enforcement detectives who were experienced with commercial robbery investigations, I am familiar with the methods used by individuals to commit commercial robberies as well as effective investigative methods used to solve them.

### III. SUMMARY OF PROBABLE CAUSE

4. Los Angeles County Sheriff's Department, the Federal Bureau of Investigation, and other law enforcement agencies, are investigating a series of robberies, consisting of approximately 24 commercial/retail robberies in the Central District of California. Based on information set forth below, law enforcement has identified SANCHEZ as the robber.

5. In particular, as set forth below, on April 15, 2021, at approximately 8:20 p.m., a man walked into a Family Dollar store in Rialto, California, in the Central District of California, brandished a gun in his waistband, demanded money, and walked out with the money from the register. Law enforcement reviewed surveillance video of the Family Dollar store robber and saw that he wore a black Los Angeles Rams baseball hat, a blue jacket, and black shoes. A witness outside the store described the robber getting into a white Nissan Sentra and provided a partial California license plate. A white Nissan Sentra with a matching California license plate was captured on camera, within the vicinity of the robbery. That car is registered to Erendira Morales ("Morales"), a woman recently found with SANCHEZ in a traffic stop and who is believed to be his girlfriend.

6. On April 27, 2021, at approximately 6:17 p.m., a man walked into the 99 Cent Only Store in Torrance, California, in the Central District of California, brandished a gun in his waistband, demanded money, and walked out with the money from the register. Following the robbery, SANCHEZ was arrested at a hotel located in Lynwood, California by the Los Angeles County Sheriff's Department ("LASD"). LASD was "pinging" SANCHEZ's phone, pursuant to a state issues search warrant, and noticed his cell phone pinged near the 99 Cent Only Store in Torrance at the time of the robbery. LASD called the Torrance Police Department and confirmed that a robbery had occurred at the location. Later that night, LASD located and arrested SANCHEZ at a hotel in Lynwood, along with Morales.

7. Based on an open-source review of Morales's Facebook account, law enforcement identified a photo of SANCHEZ wearing a black Los Angeles Rams hat and blue coat, which appear to match the clothing worn by SANCHEZ in the surveillance footage of many of these robberies. SANCHEZ's DMV photos and parole photos resemble those seen in the Family Dollar store surveillance footage.

### IV. STATEMENT OF PROBABLE CAUSE

**A. The April 15, 2021 Family Dollar Store Robbery**

8. On April 15, 2021, in the City of Rialto, California, at approximately 8:20 p.m., a man robbed the Family Dollar store located at 271 W. Baseline Rd. (the "Family Dollar"). Based on my review of the Rialto Police Department report and my own investigation, I am aware of the following:

9.   On the night of April 15, 2020, Rialto Police Department officers responded to a radio call of a robbery investigation at the Family Dollar store and spoke with victims and witnesses.  Victim V.H. stated that a man grabbed items and brought them to the counter.  V.H. had begun scanning the man's items when the man lifted up his shirt and brandished a black handgun in his waistband.  The man told V.H. to give him all the money in the register.  V.H. placed it in the bag and the man walked out of the store.  V.H. then called police and described the suspect as a Hispanic male in his mid-30s, wearing a dark colored hat, a neck gaiter/mask over his nose, a blue jacket, and dark colored pants.  V.H. stated that he/she could see a tattoo on his face.

10.  A Rialto Police Department officer reviewed the Family Dollar store surveillance video and described the robber as a Hispanic male, approximately 5'8" or 5'9" with tattoos around his eyes.  The robber wore a black Los Angeles Rams hat, facemask, blue jacket, and black pants.

11.  W.H. a witness who was walking through the parking lot, reported to Rialto Police Department detectives that he saw the robber, who was wearing a hat and dark colored jacket, exit the Family Dollar store and enter the passenger side of a white Nissan Sentra.  W.H. described the robber as a Hispanic male, approximately 5'9" to 5'10" and 30-40 years' old.  The witness was able to provide a partial plate for the vehicle: California License Plate 6FH_843 or 6F_H843.  W.H. stated that the car was a late 90s or early 2000s model with faded paint on the hood and

peeling tint on the windows. W.H. also stated that the driver of the vehicle was a Hispanic female about 20-30 years old with dark hair and thicker build. W.H. stated that the Nissan Sentra drove away southbound.

12. Using department resources, LASD Det. Yzabal, one of the investigators on the robbery series, identified a white Nissan Centra registered with California License Plate 6FHB443. The vehicle was captured by automated law enforcement license plate readers driving southbound on Riverside Ave., approaching the 10 Freeway, approximately 10 minutes after the Family Dollar robbery. The proximity between the location the car was captured and the Family Dollar store could easily be driven in 10 minutes.

13. On April 20, 2021, a Rialto Police Department Detective sent the witness a photograph of the Nissan Sentra (License Plate Number 6FHB443). When viewing the photograph, W.H. stated "That's him."

14. Based on registration documents, the white Nissan Sentra is registered to Morales at 2427 E. 130th Street, Compton, California.

15. A California Department of Motor Vehicle check shows that Morales matches the description of the driver of the white Nissan Sentra provided by W.H., the Family Dollar robbery witness.

16. Previously, on March 28, 2021, Los Angeles County Century Sherriff Station Deputies conducted a traffic stop on a

different during which Morales was a passenger, with SANCHEZ driving the vehicle.

17. Law enforcement subsequently obtained parole pictures taken of SANCHEZ on multiple dates. The photographs depict a 40-year-old Hispanic male, 5'9" tall, with neck and face tattoos. Law enforcement also obtained a Facebook profile photo from Morales's Facebook account. SANCHEZ is present in that photo and appears to be wearing the same black Rams hat and coat used in the Family Dollar store robbery. Investigators viewed surveillance photos taken from the robbery of the Family Dollar store and concluded SANCHEZ was the robber based on the similarity of appearance between the two individuals and the common items worn by the robber, namely, the jacket and black Rams hat. Furthermore, SANCHEZ has distinctive tattoos on his skull, eyebrows, forehead, chin, and neck. This includes a West Side Verdugo gang marking surrounding his neck. On some of the video images from the robberies, the location of the robber's tattoos is consistent with the location with SANHCEZ's tattoos.

    **B.    The April 27, 2021 99 Cent Only Store Robbery**

18. On April 27, 2021, at approximately 7:09 p.m., a man robbed the 99 Cent Only store, located at 5130 190th Street., Torrance, California. Based on my review of Torrance Police Department ("TPD") report and my own investigation, I am aware of the following:

    a. Victim store employee, J.G., stated he/she was working as a cashier when the robber came to J.G.'s aisle and placed several items on the checkout counter. J.G. rang up the

items, bagged the items, and told the robber the total was $4.29.  The robber handed J.G. one five-dollar bill.  When J.G. opened the cash registered, the robber lifted his shirt and revealed the grip of a black handgun tucked into his waistband.  The robber said, "Give me all the money."  J.G. complied with the robber's demand and took all of the cash out of the register and placed the cash into the bag the robber provided for his merchandise.  The robber then walked casually out of the store.

   b. J.G. described the robber was a Hispanic male, approximately 30 years of age, medium build, and between 5'08" to 5'09".

   c. The robber took approximately $80 in U.S. currency, including two premium Orchard energy blend trail mix; one Pentonic 3 count ball point pens; and one Sunbeam heavy duty battery 8-pack, size AA.

   d. Video from the store captured the robber inside the store.

  19. Shortly following the robbery that night, Det. Yzabal contacted TPD regarding a possible suspect that was detained in Lynwood, California.

  20. J.G. agreed to participate in a Field Show-up of the detained suspect.  J.G. was read TPD's Field Show-up admonishment form.  During the show-up, J.G. identified the SANCHEZ as the person who robbed the store.  J.G. specifically recognized the tattoos around SANCHEZ's eye.

  21. LASD deputies located a black plastic and metal replica handgun under the front passenger's seat of the vehicle

SANCHEZ was detained in.  TPD Officer Guell showed J.G. the replica handgun and J.G. said that was the handgun that the robber had brandished.  The firearm turned out to be a black pellet gun with black tape wrapped around the handle.

22.  In the back seat of the vehicle, a 99 Cent Store shopping bag was recovered.  The items inside the bag contained several of the items take during the robbery.  J.G. was shown the bag and items and J.G. identified the bag and contents as the items taken during the robbery.

23.  TPD Officer Guell, who reviewed the store's video surveillance footage of the robbery, noticed that SANCHEZ was wearing the same OD (Olive Drab) green jacket and dark pants as the robber did in the video.

  **C. SANCHEZ's Phone was being "Pinged" Pursuant to a Search Warrant**

24.  Prior to both the April 27, 2021 robbery, a state search warrant was signed and approved by the Honorable Judge Jaqueline H. Lewis. LASD began to ping SANCHEZ's mobile phone ending in x6248 and Morales's phone ending in x4478.

25.  On April 27, 2021, at approximately 6:57 p.m., Det. Yzabal received a two-meter hit/ping for SANCHEZ's in the center of the 99 Cent Only store, located at 5130 W. 190th Street., Torrance, California.  The 6:57 p.m. ping for MORALES placed the ping at a six-meter ping near the corner of Anza Avenue and 190th Street, Torrance, California.  This location is approximately .1 miles from the 99 Cent Only store.

26. Because SANCHEZ was suspected of robbing multiple 99 Cent Only stores, or similar stores, as detailed above and below, Det. Yzabal contacted TPD and was informed a 99 Cent Only store had just been robbed by a man who matched SANCHEZ's description.

27. LASD Burglary Robbery Task Force members conducted surveillance and saw Morales's registered vehicle -- a white Nissan Centra, License plate 6FHB443 -- leaving the "Lark Motel" located at 1013 Atlantic Avenue, Compton, California. Morales was driving the vehicle and SANCHEZ was seated in the front passenger seat. Believing that they had just committed the robbery in Torrance, a traffic stop was conducted on the vehicle. Morales and SANCHEZ were both detained without incident.

   **D.   Involvement in Other Robberies Under Investigation as Part of the Conspiracy**

28. Law enforcement believes SANCHEZ to be the robber of each of the following robberies, which have a similar or identical modus operandi, clothing, and appearance of the suspect:

   a.   November 14, 2020: Walgreens, 4351 Imperial Hwy, Lynwood, California;

   b.   November 14, 2020: Circle K, 3504 Imperial Hwy, Lynwood, California;

   c.   December 23, 2020: Little Caesar Pizza, 1019 Long Beach Blvd, Lynwood, California;

        d.    <u>February 3, 2021</u>: Subway, 10921 Atlantic Ave., Lynwood, California;

        e.    <u>February 7, 2021</u>: Subway, 6590 Atlantic Ave., Long Beach, California;

        f.    <u>February 8, 2021</u>: Subway, 8330 Long Beach Blvd, South Gate, California;

        g.    <u>February 20, 2021</u>: Little Caesar Pizza, 10910 Long Beach Blvd, Lynwood, California;

        h.    <u>February 25, 2021</u>: Family Dollar Store, 3610 Firestone Blvd, South Gate, California;

        i.    <u>February 27, 2021</u>: Subway, 6784 Cherry Ave, Long Beach, California;

        j.    <u>February 28, 2021</u>: Subway, 3522 Tweedy Blvd, South Gate, California;

        k.    <u>February 28, 2021</u>: Lynwood Farmers Market, 12301 Atlantic Ave., Lynwood California;

        l.    <u>March 2, 2021</u>: Subway, 6590 Atlantic Ave., Long Beach, California;

        m.    <u>March 6, 2021</u>: Starbucks, 10925 Atlantic Ave., Lynwood, California;

        n.    <u>March 24, 2021</u>: Dominos, 795 W. Highland Ave., San Bernardino, California;

        o.    <u>March 29, 2021</u>: Dominos, 2251 W. Rosecrans, Compton, California;

        p.    <u>April 1, 2021</u>: Dollar Tree, 3638 Tweedy Blvd, South Gate, California;

q. <u>April 3, 2021</u>: Subway, 11747 E. Whittier Blvd, Whittier, California;

r. <u>April 6, 2021</u>: Subway, 6784 Cherry Ave, Long Beach, California;

s. <u>April 10, 2021</u>: Family Dollar, 2150 N. Sierra Way, San Bernardino, California;

t. <u>April 10, 2021</u>: Family Dollar, 1137 W. Baseline St., San Bernardino, California; and

u. <u>April 13, 2021</u>: Family Dollar, 8933 Sierra Ave., Fontana, California.

29. SANCHEZ's is believed to be the robber in each robbery based on: (1) the <u>modus operandi</u> of the robber, which involved targeting similar or identical chain convenience or fast food stores, approaching the counter with items, brandishing a common black gun, and demanding all the money; (2) the similar witness descriptions of the robber, a Hispanic male who was 30-40-years'-old with facial or neck tattoos, including descriptions and even drawings that match SANCHEZ's tattoos; (3) commonalities among the black Rams hat, jacket, and shoes worn throughout the robberies and visible in Morales's Facebook account photo and the various robberies; and (4) the similarities in appearance of the robber in the various surveillance photos and videos taken from each of these robberies and SANCHEZ -- including the aforementioned clothing, tattoos, and general appearance.

30. Based on my review of SANCHEZ's criminal history, I learned the following:

      a.    SANCHEZ was convicted on March 20, 2003 and sentenced to 36 months in prison for "211 PC-Robbery: Second Degree."

      b.    SANCHEZ was convicted on December 12, 2001 and sentenced to 24 months in prison for "10851(A) VC-Take veh w/o consent/veh theft."

      c.    SANCHEZ was charged in 2006 and sentenced to 36 months in prison for "11377(A) HS_Possess Controlled Substance."

### E. Family Dollar Store Sells Goods in and Affecting Interstate Commerce

31. The Family Dollar store is a business that engages in interstate commerce. I reviewed the company's website and can attest:

      a.    Family Dollar store is a nationwide retail store with over 8,000 locations. Family Dollar is headquartered in North Carolina. Family Dollar stores are located outside the state of California.

### F. 99 Cent Only Store Sells Goods in and Affecting Interstate Commerce

32. The 99 Cent Only store is a business that engages in interstate commerce. I reviewed the company's website and can attest:

      a.    The 99 Cent Only Store has more than 350 stores located in four states. They have two distribution centers in California and Texas.

### V. CONCLUSION

33. For all the reasons described above, there is probable cause to believe that SANCHEZ has committed violations of 18

U.S.C. § 1951(a) (Interference with Commerce by Robbery) for his involvement in the two robberies described above.

SA Stephen J. May
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 3rd day of May, 2021.

*Paul L. Abrams*

UNITED STATES MAGISTRATE JUDGE
HON. PAUL L. ABRAMS